IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSHUA CACHO,

          Plaintiff,

    v.

TOBIAS & ASSOCIATES INC, d/b/a
GETMEHEALTHCARE.COM, a Florida
Limited Liability Corporation,

          Defendant.

§
§
§
§
§
§
§
§
§
§
§
§
§

6:23-CV-152-CEM-LHP

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.     The Plaintiff is JOSHUA CACHO ("Plaintiff") a natural person, resident of the Middle District of Florida, and was present in Florida for all calls, in this case in Seminole County, Florida.

2.     Defendant TOBIAS & ASSOCIATES INC ("TOBIAS") is a Limited Liability Company organized and existing under the laws of Florida with its principal address at 123 NW 13th ST. STE 101 Boca Raton, Florida 33432, United States, and can be served via registered agent Tobias, Michael at 123 NW ST. STE 101 Boca Raton, Florida 33432, United States.

3.     Defendant TOBIAS & ASSOCIATES INC is hereinafter known as "Defendant" and/or "TOBIAS".

### JURISDICTION AND VENUE

4.     This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims

1

pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

## PERSONAL JURISDICTION

5.      This Court has general personal jurisdiction over the Defendantbecause they are a Florida Limited Liability Company.

6.      This Court has supplemental subject matter jurisdiction over Plaintiff's claims arising under Florida Statutes § 501.059 and § 501.601 because the claims arise from the same nucleus of operative fact, i.e., Defendant's telemarketing autodialed robocalls to Plaintiff and adds little complexity to the case.

## VENUE

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Florida residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

8.      This Court has venue over Defendant because the calls at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Florida resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*. Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

**10.**     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

**11.**     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

**12.**     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

**13.**     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

**14.**     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated there under. 47 U.S.C. § 227(c)(5).

**15.**     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

---

[1]*See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

4

**21.** The TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential umber generator; and (B) to dial such numbers. *Id.* at § 227(a)(1)

**22.** As to what type of dialing equipment constitutes an ATDS, the TCPA vests to the Federal Communication Commission ("FCC") the responsibility to promulgate regulations implementing the TCPA's requirements. *Id.* at § 227(a)(1).

**23.** Over the last nineteen years, the FCC has repeatedly recognized that a predictive dialer is an ATDS that is subject to regulation by the TCPA. In its 2003 Order, the FCC also defined a "predictive dialer" holding:

[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers. As commenters point out, in most cases, telemarketers program the numbers to be called into the equipment, and the dialer calls them at a rate to ensure that when a consumer answers the phone, a sales person is available to take the call.[1]

**24.** In 2008, the FCC affirmed "that a predictive dialer constitutes an automatic telephone dialing system and is subject to the TCPA's restrictions on the use of autodialers."[2]

**25.** A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g., Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (Internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FLORIDA STATUTES § 501.059

26.     Florida Statutes § 501.059 makes it a violation to "make or knowingly allow a telephone sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

27.     A "telephone sales call" is defined as a 'telephone call, text message, voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(j).

28.     "Prior express written consent" means an agreement in writing that: Fla. Stat. § 501.0059(g).

    1.  Bears the signature of the called party;

    2.  Clearly authorizes the person making or allowing the placement of a telephonic sales calls by telephone call, text message, or voicemail transmission to deliver or cause to be delivered to the called party a telephone sales call using an automated system for the selection or dialing of telephone numbers, the playing of a recorded message when a connection is completed to a number called, or the transmission of a prerecorded voicemail;

    3.  Includes the telephone number to which the signatory authorizes a telephonic sales

6

call to be delivered; and

4. Includes a clear and conspicuous disclosure informing the called party that;

    a. By executing the agreement, the called party authorizes the person making or allowing the placement of a telephonic sales call to deliver or cause to be delivered a telephonic sales call to the called party using an automated system for the selection or dialing of telephone numbers or playing of a recorded message when a connection is completed to a number called; and

    b. He or she is not required to directly or indirectly sign the written agreement or to agree to enter into such agreement as a condition of purchasing any property, goods, or services.

29.     A person aggrieved by a violation of this section may bring an action to recover actual damages or $500, whichever is greater. Fla. Stat. § 501.059(10)(a)(2).

30.     If the court finds that the defendant willfully or knowingly violated this section or rules adopted pursuant to this section, the court may, in its discretion, increase the amount of the award to an amount equal to not more than three times the amount available under paragraph (a). Fla. Stat. § 501.059(10)(a)(2)(b).

## FLORIDA TELEMARKETING ACT

31.     A commercial telephone seller or salesperson making a commercial telephone solicitation call may not use technology that deliberately displays a different caller identification number than the number the call is originating from to conceal the true identity of the caller. Fla. Stat. § 501.616(7)(b).

32.     A commercial telephone seller or salesperson may not transmit more than three commercial telephone solicitation phone calls from any number to a person over a 24-hour

period on the same subject matter or issue, regardless of the phone number used to make the call. Fla. Stat. § 501.616(6)(b).

**33.** In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or punitive damages, including costs, court costs, and attorney's fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. § 501.625.

## FACTUAL ALLEGATIONS

**34.** Plaintiff's personal cell phones (407) 577-3881, and (407) 577-3881 have both been registered on the National Do-Not-Call Registry for more than thirty-one (31) days prior to the first call received from Defendant TOBIAS.

**35.** Plaintiff personally registered both the cell phones at issue in this case on the National-Do-Not-Call Registry.

**36.** Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

**37.** Defendant TOBIAS operates as an insurance sales company. *See Exhibit A.*

**38.** Defendant TOBIAS operates under the dba of "GETMEHEALTHCARE.COM", and owns and operates the websites https://getmehealthcare.com, and https://tobias-insurance.com.

**39.** As part of its marketing Defendant TOBIAS hires and authorizes telemarketers to make unauthorized phone calls to consumers *en masse* using prerecorded voice messages.

**40.** Defendant TOBIAS entered into contracts authorizing telemarketers to solicit on their behalf.

**41.**     Defendant TOBIAS pays the telemarketers out of bank accounts they own and control.

**42.**     Defendant TOBIAS approves of the prerecorded scripts their telemarketers use when making calls.

**43.**     Defendant TOBIAS has been sued many times prior to Plaintiff receiving first call from Defendant for violating the TCPA, including but not limited to, *Silver v. Tobias & Associates Inc., No.4:2020cv07382 (N.D.CA., Oct. 21, 2020), Foote v. Tobias & Assosicates, Inc., No. 9:2021cv80695 (S.D.FL., May 19,2021), Nichols v. TOBIAS & ASSOCIATES INC., No. 9:2022cv80816 (S.D.FL., June 03, 2022)*

**44.**     **Calls #1-14,** *See Table A,* Plaintiff received an obnoxious amount of prerecorded voice message calls stating:

> **"Hi, this is Mary from "American Senior Citizen Care" how are you doing today? Well, Im calling you just to inform you about a new state regulated final expense insurance plan. How old are you? Great let me bring the state license coordinator for your state on the line to share information with".**

**45.**     Plaintiff received at least fifteen (15) unauthorized phone calls to his personal cell phones from telemarketers calling on behalf of Defendant TOBIAS with pre-recorded voice messages within a three-month period ("the calls").The calls Plaintiff received from or on behalf of Defendant TOBIAS solicited Plaintiff for a final expense life insurance policy.

**46.**     With information and belief, Plaintiff has received more phone calls from, or on behalf of, Defendant TOBIAS within the past two years.  These calls are currently unknown to Plaintiff but will be revealed during discovery

**47.**     **Calls # 1-14,** *See Table A,* Plaintiff received the same exact prerecorded message call over and over again, **"Hi, this is Mary from "American Senior Citizen Care"** *See Paragraph*

*44.* Each and every time Paintiff informed Defendant TOBIAS's telemarketers he was not interested and was on the federal do not call list. And each time after Plaintiff stated this, he was met with the call being disconnected.

**48.**    **Call # 15,** *See Table A,* on December 12, 2022, at 1:54 PM Plaintiff received a phone call to his personal cell phone from a telemarketer calling on behalf of Defendant TOBIAS from phone number (616) 228-1144.

**49.** ·    Plaintiff answered "hello", and repeated "hello" several times before he was greeted by a loud audible beep and then a prerecorded voice message **"Hi, this is Mary from "American Senior Citizen Care" how are you doing today?".** *See Paragraph 44.*

**50.**    Plaintiff was extremely aggravated as this was now fifteen calls he had received from Defendant TOBIAS in a three month period.  Therefore, for the sole purpose of identifying the responsible party of the calls, Plaintiff went along with the prerecorded message system and waited to speak to a representative.

**51.**    After going through the prompts Plaintiff was then transferred to Defendants telemarketer who stated his name was "Keith Obrien from Senior Benefits".

**52.**    Through information and belief, "Senior Benefits" is a fictional name designed to avoid liability under the TCPA.

**53.**    Defendant TOBIAS trains their telemarketers to use fictional names when referring to the company for the purpose of ducking TCPA accountability.

**54.**    Defendant TOBIAS's telemarketer then asked Plaintiff a series of personal and qualifying questions.

**55.**    Plaintiff was then transferred to a "licensed agent" by the name of "Christian", a "licensed agent".

10

56.     Defendant's telemarketer Christian did not state the name of the company he represented nor did he inform Plaintiff that the call was being recorded. Which Plaintiff found out later the call was being recorded without his consent.

57.     Christian then asked Plaintiff a series of more personal and qualifying question and proceeded to pitch Plaintiff with a life insurance policy.

58.     During the call Defendant TOBIAS's telemarketer informed Plaintiff that the name of the company he was employed with was GETMEHEALTHCARE.COM.

59.     Plaintiff was eventually transferred to a verification specialist who confirmed to Plaintiff that he would be charged $37.19 per month for an "accidental life insurance policy" through Fidelity Life.

60.     Plaintiff agreed to the monthly charges and the acceptance of the policy for the sole reason of discovering the parties responsible for the calls.

61.     Before hanging up Plaintiff asked Defendant's telemarketer if the call was recorded. Christians reply was "all calls are always monitored and recorded for training and security".

62.     Approximately a week later, Plaintiff received a packet from Fidelity Life with Defendant Tobias's CEO Mr. Michael Charles Tobias credited as the agent who sold the policy. *See Exhibit B.*

63.     Table A below displays the calls Plaintiff received from Defendant TOBIAS.

**TABLE A**

| No. | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | Oct 04, 2022 | 5:10 PM | (904) 712-3282 | prerecorded message "Mary from American Senior Citizen Care" |
| 2 | Oct 13, 2022 | 2:28 PM | (407) 543-9598 | prerecorded message "Mary from American Senior Citizen Care" |
| 3 | Oct 14, 2022 | 1:09 PM | (571) 427-4775 | prerecorded message "Mary from American Senior Citizen Care" |

| 4 | Oct 17, 2022 | 1:00 PM | (716) 581-9511 | prerecorded message "Mary from American Senior Citizen Care" |
| 5 | Oct 24, 2022 | 11:21 AM | (904) 834-7083 | prerecorded message "Mary from American Senior Citizen Care" |
| 6 | Oct 26, 2022 | 1:27 PM | (252) 722-8913 | prerecorded message "Mary from American Senior Citizen Care" |
| 7 | Nov 21, 2022 | 11:27 AM | (561) 726-8169 | prerecorded message "Mary from American Senior Citizen Care" |
| 8 | Nov 21, 2022 | 2:38 PM | (564) 214-5429 | prerecorded message "Mary from American Senior Citizen Care" |
| 9 | Nov 21, 2022 | 5:09 PM | (725) 529-3864 | prerecorded message "Mary from American Senior Citizen Care" |
| 10 | Nov 23, 2022 | 6:45 PM | (407) 571-0229 | prerecorded message "Mary from American Senior Citizen Care" |
| 11 | Nov 29, 2022 | 11:43 AM | (407) 571-0367 | prerecorded message "Mary from American Senior Citizen Care" |
| 12 | Nov 29, 2022 | 4:47 PM | (407) 571-0786 | prerecorded message "Mary from American Senior Citizen Care" |
| 13 | Dec 02, 2022 | 4:23 PM | (689) 229-3773 | prerecorded message "Mary from American Senior Citizen Care" |
| 14 | Dec 07, 2022 | 2:46 PM | (908) 446-2860 | prerecorded message "Mary from American Senior Citizen Care" |
| 15 | Dec 12, 2022 | 3:09 PM | (616) 228-1144 | prerecorded message "Mary from American Senior Citizen Care" trxd to telemarketer "Keith", then "Christian" whom sold Plaintiff policy |

64.    Plaintiff sent an internal do-not-call policy request to Defendant TOBIAS to emails

info@getmehealthcare.com, contactus@getmehealthcare.com, and

careers@getmehealthcare.com. on January 02, 2022, which are emails listed on Defendant

TOBIAS's website getmehealthcare.com, and Facebook page. Which are both websites

Defendant TOBIAS owns and operates.

65.    Plaintiff received an email response from mtobias@getmehealthcare.com with Defendant

TOBIAS's internal so not call policy pasted to body of email. *See Exhibit C.*

66.    Upon information and belief, Defendant TOBIAS did not train their agents who engaged

in telemarketing on the existence and use of Defendant TOBIAS's internal do not call policy as they failed to recognize Plaintiff's personal cell phones are registered on the National Do-Not-Call Registry and failed to place Plaintiff on their internal do not call roster when Plaintiff requested to not be called.

67.     Such conduct violates the TCPA and its implementing regulations, 47 CFR § 64.1200(d)(3)(requiring telemarketers to honor and record DNC requests when made).

68.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming calls consumed part of this capacity.

69.     No emergency necessitated these calls.

## VICARIOUS LIABILITY OF DEFENDANT TOBIAS

70.     Defendant is vicariously liable for the telemarketing calls that generated the leads on their behalf.

71.     The FCC is tasked with promulgating rules and orders related to the enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

72.     The FCC has explained that it's "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

73.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

13

74.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post

may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as is
> often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer separately
> in order to obtain effective relief. As the FTC noted, because sellers may
> have thousands of independent marketers, suing one or a few of them is
> unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted)

(alteration marks and internal quotation marks omitted).

75.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual

relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the

telemarketer "has apparent (if not actual) authority" to make the calls.  *Id.* at 6586 ¶ 34.

76.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's

liability requires a finding of formal agency and immediate direction and control over the third-

party who placed the telemarketing call. *Id.* at6587 ¶ 36 & n.107.

77.     To the contrary, the FCC—armed with extensive data about robocalls and Americans'

complaints about them—determined that vicarious liability is essential to serve the TCPA's

remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587

¶ 36.

78.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

79.     Defendants are legally responsible for ensuring that the affiliates that make telemarketing calls on its behalf comply with the TCPA when so doing.

80.     Defendants knowingly and actively attempted to accept business that originated through illegal telemarketing.

81.     Defendants knew (or reasonably should have known) that their telemarketers were violating the TCPA on their behalf but failed to take effective steps within their power to force the telemarketers to cease that conduct.

82.     By hiring a company to make calls on their behalf, Defendants "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

83.     Moreover, Defendants maintained interim control over the actions of their telemarketers.

84.     For example, Defendants had absolute control over whether, and under what circumstances, they would accept a customer from their telemarketers.

85.     Furthermore, Defendant had day-to-day control over the actions of its telemarketers, including the ability to prohibit them from using an ATDS to contact potential customers of Defendant and the ability to require them to respect the National Do Not Call Registry.

86.     Defendant also gave interim instructions to their telemarketers by providing lead-qualifying instructions and lead volume limits.

87.     Defendant donned their telemarketers with apparent authority to make the calls at issue. Thus, the telemarketers pitched "final expense" life insurance policies in the abstract.

88.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

89.     "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

90.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

91.     Defendant's telemarketers transferred customer information, including Plaintiff's contact information, directly to Defendant TOBIAS. Thus, the telemarketer had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

92.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

93.     Defendant is the liable party as the direct beneficiary of the illegal telemarketing as they stood to gain Plaintiff as a customer when telemarketers solicited Plaintiff for a "final expense" life insurance policy on their behalf.

16

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES

## AS A RESULT OF THE CALLS

94.     Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

95.     Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephones.

96.     Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

97.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of Plaintiff's cell phones.

### Plaintiff's cell phones are residential numbers

98.     The calls were to Plaintiff's cellular phones (407) 577-3823, and (407) 577-3881, which are Plaintiff's personal cell phones that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phones for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phones registered in his personal name, pays the cell phones from his personal accounts, and the phones are not primarily used for any business purpose.

### CAUSES OF ACTION:

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

99.   Plaintiff re-alleges and re-adopts paragraphs 1 through 98 of the Complaint as if fully set forth herein.

100.   Defendant TOBIAS and/or their affiliates or agents violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), at least fifteen (15) times by placing non-emergency telemarketing automated calls to Plaintiff's cellular telephone number using an automatic telephone dialing system without prior express written consent.

101.   Plaintiff was statutorily damaged at least fifteen (15) times under 47 U.S.C. § 227(b)(3)(B) by Defendant TOBIAS by the calls described above, in the amount of $500.00 per call.

102.   Plaintiff was further statutorily damaged because Defendant TOBIAS willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount to $1,500.00 as permitted under U.S.C. § 227(b)(3)(C) for each and every willful and/or knowing violation.

103.   Plaintiff is also entitled to and does seek an injunction prohibiting Defendant TOBIAS and their affiliates and agents from violating the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by placing non-emergency telemarketing calls to any cellular telephone number with a prerecorded message and/or without prior express written consent.

## COUNT TWO:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

**104.**   Plaintiff re-alleges and re-adopts paragraphs 1 through 98 of the Complaint as if fully set forth herein.

**105.**   Defendant TOBIAS called Plaintiff's private residential telephone numbers which were successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

**106.**   Plaintiff was statutorily damaged at least fifteen (15) times under 47 U.S.C. § 227(c)(3)(F) by Defendant TOBIAS by the telemarketing calls described above, in the amount of $500.00 per call.

**107.**   Plaintiff was further statutorily damaged because Defendant TOBIAS willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

**108.**   Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT THREE:

### (Violations of Florida Statutes § 501.059)

109.     Plaintiff re-alleges and re-adopts paragraphs 1 through 98 of the Complaint as if fully set forth herein.

110.     Defendant TOBIAS and/or their affiliates and authorized representatives called Plaintiff using automated means and prerecorded voice messages without Plaintiff's express written consent.  Fla. Stat. § 501.059(8)(a).

111.     Defendant did not have Plaintiff's prior express written consent when making the telephonic solicitation calls.  Fla. Stat. § 501.059(1)(g).

112.     Plaintiff is entitled to an award of at least $500 in damages for each such violation of Fla. Stat. § 501.059(8)a).  Fla. Stat. § 501.059(10)(a)(2).

113.     Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation.  Fla. Stat. § 501.059(10)(a)(b).

## COUNT FOUR:

### (Violations of Florida TELEMARKETING ACT)

114.     Plaintiff re-alleges and re-adopts paragraphs 1 through 98 of the Complaint as if fully set forth herein.

115.     Defendant TOBIAS and/or their affiliates and authorized representatives called Plaintiff using automated dialing equipment that intentionally transmitted false caller identification information.  Fla. Stat. 501.616(7)(b).

116.     Defendant TOBIAS and/or their affiliates and authorized representatives called Plaintiff more than three times within a 24-hour period.  Fla. Stat. 501.616(6)(b).

117.     In addition to any other penalties or remedies provided under law, a person who is injured by a violation of the provisions of this part may bring a civil action for recovery of actual damages and/or penalties and/or punitive damages, including costs, court costs, and attorney's

fees. No provision of this part shall be construed to limit any right or remedy provided under law. Fla. Stat. 501.625.

### COUNT FIVE:

### (Violations of Florida Statutes § 934.03)

**118.** Plaintiff re-alleges and re-adopts paragraphs 1 through 98 of the Complaint as if fully set forth herein.

**119.** Defendant CHW and/or their affiliates authorized the recording and distribution of calls that transpired between the Plaintiff and Defendant CHW's telemarketers without his consent and/or prior knowledge. Fla Stat. § 934.03(1)(b).

**120.** Defendant did not have Plaintiff's prior express written or verbal consent when recording the calls. Fla Stat. § 934.03(2)(a)(3)(d).

**121.** Plaintiff is entitled to an award of at least $1,000 in damages for each such violation of Fla Stat. § 934.03(1)(b), pursuant to Fla. Stat. § 934.10(1)(b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joshua Cacho prays for judgment against Defendant as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendant violates the TCPA and Fla. Stat. 501.059 and Florida Telemarketing Act;

C.    An award of $1500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against the corporation for 15 calls.

D.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 15 calls.

E.      An award of $1,000 per call in statutory damages for each such violation of Fla Stat. § 934.03(1)(b), pursuant to Fla. Stat. § 934.10(1)(b) for 15 calls.

F.      An award of $1,500 per call in statutory damages arising from 501.059(8)(a) intentional violations, pursuant to Fla. Stat. § 501.059(10)(a)(b) for 15 calls.

G.      An award of $50,000 in punitive damages arising from intentional violations of Fla. Stat. 501.616(7)(b) for all calls made.

H.      An award of $25,000 in punitive damages arising from intentional violations of Fla. Stat. 501.616(6)(b) for all calls made.

I.      An award of $5,000 in punitive damages arising from intentional violations of Fla Stat. § 934.03(1)(b), pursuant to Fla. Stat. § 934.10(1)(C) for all calls made.

J.      An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

K.      Such further relief as the Court deems necessary, just, and proper.

### JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

January 27, 2022,                          Respectfully submitted,

Joshua Cacho
Plaintiff, Pro Se
164 Estella Road
Lake Mary, Florida 32746
407-577-3881